

EYLeetrialmemo7

LEONARDO M. RAPADAS
United States Attorney
KARON V. JOHNSON
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

Attorneys for the United States of America

**FILED**
DISTRICT COURT OF GUAM

JUN 2 3 2008 RD.

JEANNE G. QUINATA
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CRIMINAL CASE NO. 08-00004 |
| Plaintiff, ) | |
| vs. ) | **UNITED STATES MEMORANDUM** |
| EUN YOUNG LEE, ) | **CONCERNING RULE 16 DISCOVERY** |
| aka Eun Young Cho, ) | |
| aka Ina Lee, ) | |
| MARCELINO J. LASERNA, ) | |
| JOHN W.C. DUENAS, ) | |
| MARY C. GARCIA, ) | |
| JOSEPH PANGELINAN, ) | |
| FRANCISCO SN KAWAMOTO, and ) | |
| MARGARET B. UNTALAN, ) | |
| Defendants. ) | |

For purposes of this memorandum, the government will continue the numbering system used in its trial memorandum.

A. Lee's 12/24/07 Statement to Agent Kline

The government has been using Exhibit 17, a draft FBI 302, of the interview with Ina Lee on December 24, 2007. After jury selection began, the final 302 was provided, which is identical to the draft except for the additional information shown in yellow highlights on page 2 of Exhibit 36, attached hereto. There, Lee told Agent Kline that she had approached William Limtiaco about trying to find a contact in MVD for licenses other than operator's licenses (apparently such

as chauffeur's or heavy equipment licenses). Limtiaco never called her back. This evidence is incriminating against Lee: one can infer that she needed an MVD contact for special licenses, but that she already <u>had</u> an inside MVD contact for the ordinary operator' licenses.

Federal Rule of Criminal Procedure 16(1)(B)(ii) provides in pertinent part:

> (B) Defendant's Written or Recorded Statements. Upon a defendant's request, the government must disclose to the defendant, and make available for copying, or photographing, all of the following: ...
>
> (ii) the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent; ...

There is no dispute that defendant made the appropriate request. Nor is there any dispute that Lee's statement about her plans to get other kinds of licenses is a written record of her oral statement made to a government agent in response to interrogation. Thus, the government failed to comply with this rule as it relates to this statement by Lee.

FRCrP 16d)(2)(C) provides that one of the more severe remedies for failing to comply with the rule is that the party be prohibited from introducing the undisclosed evidence. Here, the government believed this was an appropriate sanction, and excluded this statement from Agent Kline's direct examination.

The situation has changed, however, because defendant introduced the statement during the cross-examination of Agent Kline by Mr. Arens. Thus, it has been published to the jury by the defendant herself. Accordingly, the government believes that it should be allowed to use this statement during argument as some evidence that Lee had an inside MVD contact helping her to obtain operator's licenses.

B. Laserna and Kawamoto's Affirmation of Handwriting.

During the January 9, 2008, meetings to secure handwriting exemplars, four defendants identified their handwriting at the top of various applications. Two, Laserna and Kawamoto, each executed one-line statements to the effect they had done so. Both statements were quoted verbatim in the FBI 302s concerning the January 9 meetings. Laserna's statement is at Exhibit

-2-

34; it was incorporated into Exhibit 21. Kawamoto's statement is at 35; it was incorporated into Exhibit 26. The actual one-line statements were kept with the agent's handwritten notes concerning these meetings.

Federal Rule of Criminal Procedure 16(1)(B)(ii) provides in pertinent part:

> (B) Defendant's Written or Recorded Statements. Upon a defendant's request, the government must disclose to the defendant, and make available for copying, or photographing, all of the following:
>
> (i) any relevant written or recorded statement by the defendant if:
> - the statement is within the government's possession, custody, or control; and
> - the attorney for the government knows—or through due diligence could know—that the statement exists.

Exhibits 34 and 35 are certainly relevant written statements by the defendants which the government possessed and of which the government knew. So did defense counsel, who received Exhibits 21 and 26 respectively in the initial discovery. Thus, the government disclosed the existence of these statements in a timely manner, and even recorded them verbatim in the FBI's pertinent 302 reports. The government is not obligated to provide defendants copies of such statements, but only to disclose them and make them available for copying. This, the government did. In its initial discovery letter, government counsel invited defense counsel to please contact her if they had any questions. No one ever called. In particular, the defendants never requested to make copies of Exhibits 34 and 35, presumably because they were satisfied with the account in the 302s. There is no discovery violation here.

Respectfully submitted this __23rd__ day of June, 2008.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

By: *Karon V. Johnson* (signature)
KARON V. JOHNSON
Assistant U.S. Attorney

FD-302 (Rev. 10-6-95)

- 1 -

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription  12/31/2007

    INA EUNYOUNG LEE, also known as Eun Young LEE, date of birth August 22, 1971, United States passport number 121225094, residing at 892 B St. John Street, Upper Tumon, Guam, was interviewed at GUAM INTERNATIONAL AIRPORT subsequent to her arrest. LEE was advised of her rights as provided on an FD-395, Advice of Rights form, acknowledged that she understood her rights and waived them by signing the Waiver of Rights portion of the FD-395. At approximately 2:40 a.m., LEE was transported to FEDERAL BUREAU OF INVESTIGATION office, Guam RA, where the interview resumed. LEE was reminded that her rights still applied. After being advised of the identity of the interviewing agents and the purpose of the interview, LEE provided the following information:

    LEE has provided help to Koreans seeking Guam driver's licenses. LEE said the people she helped were friends, students and mostly golfers. ~~She added that she never helped any Korean women that were working at the local Karaoke bars~~. All but a couple of these individuals were overstays. The two that weren't overstays were students. Between 2001 and 2003, LEE assisted approximately thirty to forty Koreans with legitimately obtaining their licenses. LEE became involved in assisting Koreans in obtaining their driver's licenses at the request of KEUN, LEE (KEUN). Koreans on Guam needed driver's license to golf and KEUN, who was on Guam at the time, asked LEE for her assistance. KEUN now lives in South Korea as a semi-professional golfer.

    One of these steps included applying for an Individual Taxpayer Identification Number (ITIN) in the Korean applicant's name. In or around 2003, the INTERNAL REVENUE SERVICE (IRS) began denying these applications for individuals seeking ITINs for identification purposes.

    Once the IRS began denying LEE's submitted ITINs, LEE began creating the documents fraudulently. LEE copied an original ITIN document issued in 2003 and "whited out" the name, date of birth, and ITIN. LEE would then type over the whited out portion with information of the applicant, including a false ITIN. LEE estimates she did this approximately twenty to twenty five times. Every applicant that LEE assisted would be provided an ITIN document, either legitimate or fraudulent. LEE never provided an ITIN number on a GUAM MOTOR VEHICLES DIVISION driver's license

---

on  12/24/2007  at  Tamuning, Guam

A-HN-18383  
SA William C. Kline, Jr.:wck  
by  SA Kenneth R. Klocke

Date dictated  not dictated

GOVERNMENT EXHIBIT 17

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 10-6-95)

194A-HN-18383

Continuation of FD-302 of __Ina Eunyoung LEE__ , On __12/24/2007__ , Page __2__

application without supporting documentation. All of the applicant's were provided with the ITIN document after their license applications were submitted. The last time LEE falsified an ITIN document was at the end of 2004.

LEE knows the applicants that she assisted knew they were not entitled to a Guam driver's license. There would be no reason to used LEE otherwise. Some applicants knew specifically what was being done was illegal and others LEE told that this was not the right way to obtain a license. No applicant specifically questioned her methodology. Once LEE presented the applicant with a fraudulent ITIN, she told everyone that the document was fake or not a good one. With regards to the Guam driver's license applications that LEE completed in her hand, LEE provided all of the ITINs for those, whether they were legitimate or fraudulent.

LEE charged most individuals three hundred dollars for her services. She would charge more if the applicant was required to take driving school. In that case, LEE charged three hundred and fifty dollars more and gave that additional money to WILLIAM LIMTIACO, owner of WHEELS DRIVING SCHOOL (WHEELS). In turn, LIMTIACO would issue the applicants their certificates without teaching the students anything. LEE refereed all of her business to WHEELS. LEE added that she went to high school with LIMTIACO and that is how they knew each other.

With regards to LEE's fee, she added that some applicants gave her more money than requested. For example, LEE, KIL JA (K J LEE) paid LEE one thousand dollars. LEE said this was an example of the fact that Koreans really wanted her assistance and begged her for her help. LEE and K J LEE's children took piano lessons together.

LEE would accompany most of the applicants into the GUAM MOTOR VEHICLE DIVISION but not all. On occasion an applicant would go in by themselves to GMVD and some would get rejected because their ITIN was a copy. LEE would then go in with this applicant at a later date and submit the documents with the applicant. LEE said she was turned down by all of the examiners on at least one occasion. LEE said some of the occasions occurred because LEE used a xeroxed copy of a more recent ITIN document. The more recent documents, dated after 2003, say "VOID" when copied. These copies were always denied by examiners.

~~LEE does not believe the MVD examiners knew the~~ fraudulent ITIN documents she was presenting or had created were fake. LEE didn't favor going to any certain examiner and would go to whomever was available. LEE never paid any of the examiners any money, or gave them anything to accept fake ITINs. LEE doesn't consider any of the examiners friends and has never called any of them on the telephone. LEE did provide kimchee to a MVD examiner's relative's rosary approximately ten years ago. LEE wasn't sure but believes the supervisor of the driver's licensing section of MVD is a short man, FIRST NAME UNKNOWN BORJA.

FD-302 (Rev. 10-6-95)

- 1 -

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription  01/17/2008

    Marcelino J. LASERNA, date of birth October 27, 1947, social security account number 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, residing at 228 B. Pas Street, Tamuning, Guam, family cellular telephone number 671-787-4630, was interviewed at the UNITED STATES DISTRICT COURTHOUSE, DISTRICT OF GUAM, Hagatna, Guam by FEDERAL BUREAU OF INVESTIGATION Special Agent William C. Kline, Jr. and UNITED STATES POSTAL INSPECTION SERVICE, Postal Inspector Steve Basak. After being advised of the identity of the interviewing agents, purpose fo the interview and that LASERNA was free to leave at any time, LASERNA provided the following information:

    LASERNA was shown photocopies of Guam Driver's license applications and asked to mark all of his handwriting, if any, that appeared on the following applications:

✓SHIN, Sung Min
✓HAN, Ki Cheol
✓YANG, Jung Soo
✓KO, Young Min
✓LEE, Geun Jae
✓CHOI, Seung Pill
✓HONG, Dong Pyo
✓KIM, Mi Ra
✓CHOI, Deuk Soon
✓CHO, Chun Ja
✓HWANG, Jong Yeon
✓MIN, Jun Sung
✓KANG, Hae Sook
✓LEE, Jae Min
✓JUNG, Tae Kwun
✓KOH, Won Il
✓CHO, In Hwan
✓KANG, Hyuk Su
✓KIM, Myung Sug
✓SEOK, Jae Hoan
✓KIM, Tae Ho
✓PARK, Hak Ja
✓HONG, Sung Kyu

---

Investigation on  01/09/2008  at  Hagatna, Guam

# 194A-HN-18383  Date dictated  not dictated

by SA William C. Kline, Jr.:wck  *wk*

**GOVERNMENT EXHIBIT**
2/

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

LASERNA marked his handwriting on each application by underlining in pen. In his own hand, LASERNA wrote, signed, and dated the following statement:

> I underlined the copy of my handwriting on application that I process on written exam.

The interview is memorialized on a separate FD-302. The above-referenced applications are being maintained as evidence.

FD-302 (Rev. 10-6-95)

-1-

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription  01/17/2008

     Francisco SN KAWAMOTO, date of birth August 25, 1943, Guam driver's license number 1228071922, mailing address Post Office Box 26027, Barrigada, Guam 96921 was interviewed at the UNITED STATES DISTRICT COURTHOUSE, DISTRICT OF GUAM, Hagatna, Guam by FEDERAL BUREAU OF INVESTIGATION Special Agent William C. Kline, Jr. and UNITED STATES POSTAL INSPECTION SERVICE, Postal Inspector Steve Basak. After being advised of the identity of the interviewing agents, purpose of the interview and that KAWAMOTO was free to leave at any time, KAWAMOTO provided the following information:

     KAWAMOTO was shown photocopies of Guam Driver's license applications and asked to mark all of ~~her~~ his handwriting, if any, that appeared on the following applications:

KANG, Dongmi    8/2/05
KANG, Sung Hun
CHAE, Jung Il
LEE, Haeng Hwa
KIM, Sang Ho
KIM, Mi Jung

     KAWAMOTO marked his handwriting on each application with pen. In his hand, KAWAMOTO wrote, signed and dated the following statement:

     I review 6 DL applications and the (illegible) is my own handwring.

     The interview is memorialized on a separate FD-302. The above-referenced applications are being maintained as evidence.

---

Investigation on  01/09/2008  at  Hagatna, Guam

# 194A-HN-18383       Date dictated  not dictated

by  SA William C. Kline, Jr.:wck

**GOVERNMENT EXHIBIT 26**

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

I UNDERLINED THE COPY OF MY HANDWRITING ON APPLICATION THAT I PROCESS ON WRITTEN EXAM.

*[signature]*
01-09-08

witnessed
*[signature]*
1-9/08

GOVERNMENT EXHIBIT 34

I Review 6 DL Application and the swearing is my own Handwriting.

[Signature]
1-9-08

GOVERNMENT EXHIBIT 35

FD-302 (Rev.10-6-95)

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription  12/31/2007

INA EUNYOUNG LEE, also known as Eun Young LEE, date of birth August 22, 1971, United States passport number 121225094, residing at 892 B St. John Street, Upper Tumon, Guam, was interviewed at GUAM INTERNATIONAL AIRPORT subsequent to her arrest. LEE was advised of her rights as provided on an FD-395, Advice of Rights form, acknowledged that she understood her rights and waived them by signing the Waiver of Rights portion of the FD-395. At approximately 2:40 a.m., LEE was transported to FEDERAL BUREAU OF INVESTIGATION office, Guam RA, where the interview resumed. LEE was reminded that her rights still applied. After being advised of the identity of the interviewing agents and the purpose of the interview, LEE provided the following information:

LEE has provided help to Koreans seeking Guam driver's licenses. LEE said the people she helped were friends, students and mostly golfers. She added that she never helped any Korean women that were working at the local Karaoke bars. All but a couple of these individuals were overstays. The two that weren't overstays were students. Between 2001 and 2003, LEE assisted approximately thirty to forty Koreans with legitimately obtaining their licenses. LEE became involved in assisting Koreans in obtaining their driver's licenses at the request of KEUN, LEE (KEUN). Koreans on Guam needed driver's license to golf and KEUN, who was on Guam at the time, asked LEE for her assistance. KEUN now lives in South Korea as a semi-professional golfer.

One of these steps included applying for an Individual Taxpayer Identification Number (ITIN) in the Korean applicant's name. In or around 2003, the INTERNAL REVENUE SERVICE (IRS) began denying these applications for individuals seeking ITINs for identification purposes.

Once the IRS began denying LEE's submitted ITINs, LEE began creating the documents fraudulently. LEE copied an original ITIN document issued in 2003 and "whited out" the name, date of birth, and ITIN. LEE would then type over the whited out portion with information of the applicant, including a false ITIN. LEE estimates she did this approximately twenty to twenty five times. Every applicant that LEE assisted would be provided an ITIN document, either legitimate or fraudulent. LEE never provided an ITIN number on a GUAM MOTOR VEHICLES DIVISION driver's license

---

Investigation on  12/24/2007  at  Tamuning, Guam

File #  194A-HN-18383                              Date dictated  not dictated

       SA William C. Kline, Jr.:wck
by     SA Kenneth R. Klocke

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to it and its contents are not to be distributed outside your agency.

GOVERNMENT EXHIBIT 36

application without supporting documentation.  All of the
applicant's were provided with the ITIN document after their
license applications were submitted.  The last time LEE falsified
an ITIN document was at the end of 2004.

    LEE knows the applicants that she assisted knew they were
not entitled to a Guam driver's license.  There would be no reason
to used LEE otherwise.  Some applicants knew specifically what was
being done was illegal and others LEE told that this was not the
right way to obtain a license.  No applicant specifically
questioned her methodology.  Once LEE presented the applicant with
a fraudulent ITIN, she told everyone that the document was fake or
not a good one.  With regards to the Guam driver's license
applications that LEE completed in her hand, LEE provided all of
the ITINs for those, whether they were legitimate or fraudulent.

    LEE charged most individuals three hundred dollars for
her services.  She would charge more if the applicant was required
to take driving school.  In that case, LEE charged three hundred
and fifty dollars more and gave that additional money to WILLIAM
LIMTIACO, owner of WHEELS DRIVING SCHOOL (WHEELS).  In turn,
LIMTIACO would issue the applicants their certificates without
teaching the students anything.  LEE refereed all of her business
to WHEELS.  At one time LEE had asked LIMTIACO if there was anyone
in MVD that could help her get licenses other than operator's
licenses.  LIMTIACO never got back to LEE with an answer.  LEE
added that she went to high school with LIMTIACO and that is how
they knew each other.

    With regards to LEE's fee, she added that some applicants
gave her more money than requested.  For example, LEE, KIL JA (K J
LEE) paid LEE one thousand dollars.  LEE said this was an example
of the fact that Koreans really wanted her assistance and begged
her for her help.  LEE and K J LEE's children took piano lessons
together.

    LEE would accompany most of the applicants into the GUAM
MOTOR VEHICLE DIVISION but not all.  On occasion an applicant would
go in by themselves to GMVD and some would get rejected because
their ITIN was a copy.  LEE would then go in with this applicant at
a later date and submit the documents with the applicant.  LEE said
she was turned down by all of the examiners on at least one
occasion.  LEE said some of the rejections occurred because LEE
used a xeroxed copy of a more recent ITIN document.  The more

FD-302a (Rev. 10-6-95)

194A-HN-18383

Continuation of FD-302 of  ___Ina Eunyoung LEE_____ , On _12/24/2007_ , Page __3__

recent documents, dated after 2003, say "VOID" when copied. These copies were always denied by examiners.

    LEE does not believe the MVD examiners knew the fraudulent ITIN documents she was presenting or had created were fake. LEE didn't favor going to any certain examiner and would go to whomever was available. LEE never paid any of the examiners any money, or gave them anything, to accept fake ITINs. LEE doesn't consider any of the examiners friends and has never called any of them on the telephone. LEE did provide kimchee to a MVD examiner's relative's rosary approximately ten years ago. LEE wasn't sure but believes the supervisor of the driver's licensing section of MVD is a short man, FIRST NAME UNKNOWN BORJA.